1
2
3
4
5
6
7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   NICOLE A. HARDIN,                              No.  2:15-cv-2435-KJN

12                      Plaintiff,

13          v.                                       ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                        Defendant.
16

17

18          Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

19   ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI")

20   under Title XVI of the Social Security Act ("Act").[1]  In his motion for summary judgment,

21   plaintiff principally contends that the Commissioner erred by finding that plaintiff was not

22   disabled from April 29, 2002, through the date of the final administrative decision.  (ECF No. 14.)

23   The Commissioner filed a cross-motion for summary judgment and opposition to plaintiff's

24   motion for summary judgment.  (ECF No. 21.)  Plaintiff filed a reply.  (ECF No. 26.)

25   ////

26

27   _____
     [1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both
28   parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.
     (ECF Nos. 7, 8.)

                                                     1

1    After carefully considering the parties' written briefing, the court's record, and the

2    applicable law, the court DENIES plaintiff's motion, GRANTS the Commissioner's cross-

3    motion, and AFFIRMS the final decision of the Commissioner.

4    I.    BACKGROUND

5         Plaintiff was born on May 12, 1972, completed the eleventh grade and later obtained a

6    GED, and is able to communicate in English.  (Administrative Transcript ("AT") 64, 69, 506,

7    683.)[2]  She previously worked as a cashier at Walgreens and Taco Bell.  (AT 71, 79.)  Plaintiff

8    applied for SSI on April 29, 2002, alleging that her disability began on December 1, 1999.  (AT

9    64-66.)  Plaintiff alleged that she was disabled primarily due to depression, paranoia, tiredness,

10   stomachaches, and hand and finger pain.  (AT 70, 93, 591, 677-92.)  After plaintiff's application

11   was denied initially and on reconsideration, plaintiff requested a hearing before an administrative

12   law judge ("ALJ"), which took place on December 17, 2003, and at which plaintiff, represented

13   by an attorney, testified.  (AT 42-43, 317-53.)  The ALJ issued a decision dated March 25, 2004,

14   determining that plaintiff had not been under a disability, as defined in the Act, from her

15   application date, through the date of that decision.  (AT 17-25.)  The ALJ's decision became the

16   final decision of the Commissioner when the Appeals Council denied plaintiff's request for

17   review on December 17, 2004.  (AT 5-7.)  Plaintiff then filed an action in federal court for review

18   of the ALJ's decision pursuant to 42 U.S.C. § 405(g), and the court remanded the case for further

19   proceedings on September 19, 2006.  (AT 396-405.)  Accordingly, the Appeals Council vacated

20   the ALJ's March 25, 2004 decision and remanded this matter for a further hearing before an ALJ.

21   (AT 395.)

22        The new hearing was scheduled for June 12, 2007; however, plaintiff failed to appear and

23   the ALJ issued a notice to show cause based on that failure.  (AT 378-79, 476-81.)  On August

24   10, 2007, the ALJ issued a decision dismissing plaintiff's case because plaintiff failed to provide

25   good cause for her failure to appear at the hearing.  (AT 380-83.)  Plaintiff requested review of

26

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's
medical history, the court does not exhaustively relate those facts in this order.  The facts related
to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues
presented by the parties' respective motions.

27

28

2

that decision before the Appeals Council, which granted review, and issued an order on May 3, 2008, that vacated the ALJ's decision of dismissal and directed the ALJ to conduct another hearing.  (AT 433-35.)

An ALJ held another hearing on July 8, 2008, at which plaintiff and a vocational expert ("VE") testified.  (AT 369.)  The ALJ issued a decision dated February 26, 2009, determining that plaintiff had not been under a disability, as defined in the Act, from her application date, through the date of that decision.  (AT 369-77.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on May 24, 2011.  (AT 354-57.)  Plaintiff again filed an action in federal district court for review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), and the court remanded the case for further proceedings at the Commissioner's request because a transcript of the hearing held on July 8, 2008, could not be prepared.  (AT 520-23.)  Accordingly, on December 20, 2012, the Appeals Council vacated the ALJ's February 29, 2009 decision and remanded for a further hearing before an ALJ.  (Id.)

An ALJ held a third hearing in this matter on July 17, 2013, at which plaintiff, represented by counsel, and a VE testified.  (AT 661-723.)  The ALJ issued a decision dated October 25, 2013, determining that plaintiff had not been under a disability, as defined in the Act, from her application date, through the date of that decision.  (AT 496-507.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 23, 2015.  (AT 482-85.)  Plaintiff filed this action in federal district court on September 23, 2015, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.   ISSUES PRESENTED

On appeal, plaintiff raises the following issues:  (1) whether the ALJ's residual functional capacity ("RFC") determination with regard to plaintiff's physical functioning was supported by substantial evidence in the record; (2) whether the ALJ erred in considering the medical opinions of Dr. Marshall and Dr. Kalman when rendering his RFC determination; (3) whether the ALJ erred in determining that plaintiff's pain and symptom testimony was not credible; and (4) whether the ALJ erred in relying on the VE's testimony to determine at step five of the sequential analysis that there were other jobs within that national economy that plaintiff could

1    perform given her RFC.

2    III.   LEGAL STANDARD

3          The court reviews the Commissioner's decision to determine whether (1) it is based on

4    proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

5    as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

6    evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

7    F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

8    mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

9    Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  "The ALJ is

10   responsible for determining credibility, resolving conflicts in medical testimony, and resolving

11   ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The

12   court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational

13   interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

14   IV.   DISCUSSION

15          A.   Summary of the ALJ's Findings

16          The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard

17   five-step analytical framework.[3]  At the first step, the ALJ concluded that plaintiff had not

18   ─────────────────

19   [3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social
     Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled
20   persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as
     an "inability to engage in any substantial gainful activity" due to "a medically determinable
21   physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel
     five-step sequential evaluation governs eligibility for benefits under both programs.  See 20
22   C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-
     42 (1987).  The following summarizes the sequential evaluation:

23
         Step one: Is the claimant engaging in substantial gainful activity?  If so, the
24       claimant is found not disabled.  If not, proceed to step two.

25       Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step
26       three.  If not, then a finding of not disabled is appropriate.

27       Step three: Does the claimant's impairment or combination of impairments meet or
         equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the
28       claimant is automatically determined disabled.  If not, proceed to step four.

engaged in substantial gainful activity since April 29, 2002, the application date.  (AT 498.)  At step two, the ALJ found that plaintiff had the following severe impairments:  "obesity, depression, anxiety, history of psychosis, not otherwise specified, history of polysubstance abuse in full sustained remission, history of paranoid schizophrenia, schizoaffective disorder, generalized anxiety disorder, and borderline intellectual functioning."  (Id.)  However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 499.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a wide range of medium work as defined in 20 CFR 416.967(c): the claimant has the ability to lift or carry up to 50 pounds occasionally and up to 25 pounds frequently; stand and/or walk for approximately 6 hours per 8 hours work day, and sit for approximately 6 hours per 8 hour work day.  The claimant can rarely (defined [as] 20 percent of the work day) have face-to-face interaction with the general public; can frequently have face-to-face interaction with coworkers and supervisors; and can occasionally understand, remember, and carry out complex or detailed job instructions.  Moreover the claimant can work at jobs with quotas or goals on a weekly or daily basis, but not jobs that have hourly goals.

(AT 500.)

////

> Step four:  Is the claimant capable of performing his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

At step four, the ALJ found that plaintiff was unable to perform her past relevant work. (AT 506.)  At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  (Id.)  Accordingly, the ALJ determined that plaintiff was not disabled within the meaning of the Act since April 29, 2002, the date plaintiff's SSI application was filed.  (AT 507.)

     B.     <u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

          1.     *Whether the ALJ Committed Prejudicial Error in Finding that Plaintiff has the Physical RFC to Perform Medium Work*

First, plaintiff argues that the ALJ erred in finding that plaintiff has the physical RFC to perform medium work because that determination is not supported by any medical opinion evidence in the record.  More specifically, plaintiff argues that all of the opinion evidence in the record is with regard to the extent of plaintiff's mental limitations; no physician has opined on plaintiff's physical limitations.  Plaintiff contends that this means that the ALJ must have rendered his determination that plaintiff can perform medium work based off nothing more than his own lay opinion and the record was inadequate to allow the ALJ to properly evaluate the medical evidence regarding plaintiff's physical impairments.  Plaintiff argues that the ALJ committed prejudicial error in rendering his physical RFC determination on such a basis, therefore, this action should be remanded so the ALJ can obtain an opinion from one of plaintiff's treating physicians, or order a consultative examination regarding the extent of plaintiff's physical impairments.  The court finds plaintiff's argument lacks merit.

The evidence in the record regarding plaintiff's physical impairments consists primarily of plaintiff's own complaints regarding stomach, hand, and back issues, and headaches, which plaintiff claims caused disabling levels of pain.  (E.g., AT 113, 151-52, 154, 157, 186, 278, 287, 327-29, 333, 338-39, 584, 591, 677-78, 690.)  However, the actual examination notes and objective medical findings from plaintiff's treating physicians from throughout the entire course of the relevant period demonstrate largely normal physical examination findings and the fact that plaintiff either had no physical impairments, or minor physical issues that were quickly remedied

1    with conservative treatment.  (E.g., AT 113, 157, 174, 186, 275, 278-79, 465, 572-84, 591, 596-

2    97, 601.)  As discussed in more detail below, the ALJ properly found plaintiff's claims regarding

3    the extent of her symptoms and pain to lack credibility.  The only physical impairment that

4    plaintiff's treating physicians consistently found was that plaintiff was obese.  (E.g., 596-97.)

5    The ALJ's decision reflected these findings by including obesity as plaintiff's sole "severe"

6    impairment at step two.  (AT 498.)  The ALJ further explained at the July 17, 2013 hearing that

7    he believed that, based on plaintiff's medical records, her obesity rendered her capable of medium

8    work.  (AT 718-19.)  In short, the record clearly demonstrates that plaintiff did not have physical

9    impairments that would have rendered her disabled and the ALJ's physical RFC determination

10    that plaintiff could perform medium work reasonably reflected that fact.

11          Plaintiff contends, however, that the sparse medical evidence in the record regarding

12    plaintiff's physical impairments still does not support the ALJ's determination that plaintiff could

13    perform the specific functional requirements of medium work, such as an ability to stand and/or

14    walk 6 hours in an 8-hour workday.  However, even assuming *arguendo* that there was not

15    substantial evidence in the record to support the ALJ's specific finding that plaintiff could

16    perform medium work, any such error was harmless because plaintiff's medical records regarding

17    her physical impairments clearly demonstrate that plaintiff did not have a debilitating physical

18    impairment.  If anything, the ALJ actually gave plaintiff the benefit of the doubt in finding that

19    her physical RFC rendered her capable of medium work given the fact that the objective medical

20    evidence in the record shows that plaintiff had physical impairments that were mostly temporary

21    and no more than mild in nature.  (See AT 718-19.)

22          Plaintiff also argues that the lack of medical evidence in the record regarding plaintiff's

23    physical impairments means that the ALJ was required to further develop the record.  "An ALJ's

24    duty to develop the record further is triggered only when there is ambiguous evidence or when the

25    record is inadequate to allow for proper evaluation of the evidence."  Mayes v. Massanari, 276

26    F.3d 453, 459-60 (9th Cir. 2001) (citing Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir.

27    2001)).  As discussed above, the record here provided the ALJ with sufficient evidence to

28    determine that plaintiff did not have a physical impairment that rendered her physically disabled.

It was plaintiff's duty to prove that she was disabled.  See 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.").  The Code of Federal Regulations explains:

> In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairments(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence.

20 C.F.R. § 416.912(a).  Plaintiff failed to proffer sufficient evidence that she had a debilitating physical impairment; it was not the ALJ's duty to take steps to rectify that failure.[4]  Accordingly, the ALJ did not fail to fulfill his duty to develop the record.  Nor did he commit prejudicial error in determining that plaintiff's physical RFC rendered her capable of performing medium work.

> 2. *Whether the ALJ Erred in Considering and Weighing the Medical Opinion Evidence in the Record Regarding the Limitations Caused by Plaintiff's Mental Limitations*

Second, plaintiff argues that the ALJ erred in considering and weighing the medical opinion evidence in the record regarding plaintiff's mental impairments.  Specifically, plaintiff argues that the ALJ erred by assigning "good weight" to the opinion of Dr. Marshall, a consultative examining psychologist, but failing to fully capture the limitations opined by that physician within his RFC determination.  Plaintiff also argues that the ALJ erred by assigning "little weight" to the opinions of Dr. Kalman, a consultative examining psychiatrist, without providing proper reasons for doing so that were supported by substantial evidence in the record.

////

---

[4] Nevertheless, the ALJ still gave plaintiff's counsel an opportunity to submit a brief to explain why the record demonstrated that a consultative physical examination was necessary, and her counsel did not provide one.  (AT 722.)

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion.  Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

////

////

////

---

[5] The factors include:  (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization.  20 C.F.R. §§ 404.1527, 416.927.

1                 a.      Dr. Marshall

2      Dr. Marshall conducted a complete psychiatric evaluation of plaintiff on August 25, 2002,

3 which consisted of a review of plaintiff's medical records, an interview with plaintiff, and an

4 independent mental status examination. (AT 122-28.) Based on this examination, Dr. Marshall

5 provided an assessment of plaintiff's workplace limitations stemming from her mental

6 impairments. (AT 128.) In that assessment, Dr. Marshall opined that plaintiff has no impairment

7 in the ability to carry out simple job instructions, but "may be impaired" in the ability to

8 understand, remember, or complete complex commands. (Id.) She opined further that plaintiff

9 was "moderately impaired" in the ability to respond appropriately to supervision, coworkers, or

10 the public, and to maintain concentration and attention. (Id.) Dr. Marshall also found that

11 plaintiff was "significantly limited" in the ability to perform day-to-day activities including

12 attendance and was "markedly limited" in the ability to adapt to normal work stress. (Id.) She

13 also found that plaintiff was not significantly limited in the ability to perform work activities

14 without special supervision and did best when working alone. (Id.) Finally, Dr. Marshall opined

15 that plaintiff's condition was expected to improve within the next 12 months with active

16 treatment. (Id.)

17      The ALJ assigned "good weight" to Dr. Marshall's opinion because her opinion was

18 "supported by objective findings including observations upon mental status testing as well as

19 being consistent with the evidence of record as a whole." (AT 502.) Plaintiff argues that the

20 ALJ's RFC determination failed to properly incorporate into his RFC determination the

21 limitations Dr. Marshall opined with regard to plaintiff's ability to interact with supervisors and

22 coworkers and in adapting to work-place stressors, which plaintiff contends constitutes

23 prejudicial error as those limitations should also have been included in the ALJ's RFC

24 determination. The court finds plaintiff's argument unpersuasive.

25      In addition to assigning "good weight" to Dr. Marshall's opinion, the ALJ also assigned

26 "great weight" to the opinion of Dr. Gottschalk, another examining psychiatrist. (AT 502-03.)

27 Dr. Gottschalk completed a mental residual functional capacity assessment after an examination

28 of plaintiff on April 10, 2003. (AT 191-93.) Dr. Gottschalk opined that plaintiff is not

1   significantly limited in the ability to remember locations and work-like procedures; understand,

2   remember, and carry out very short and simple instructions; sustain an ordinary routine without

3   special supervision; make simple work-related decisions; ask simple questions or request

4   assistance; maintain socially appropriate behavior and to adhere to basic standards of neatness

5   and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards

6   and take appropriate precautions; and travel in unfamiliar places or use public transportation.

7   (AT 191-92).  He opined further that plaintiff is "moderately limited" in the ability to understand,

8   remember, and carry out detailed instructions; maintain concentration and attention for extended

9   periods; perform activities within a schedule, maintain regular attendance, and be punctual within

10  customary tolerances; work in coordination with or proximity to others without being distracted

11  by them; complete a normal workday and workweek without interruptions from psychologically

12  based symptoms and perform at a consistent pace without an unreasonable number and length of

13  rest periods; interact appropriately with the general public; accept instructions and respond

14  appropriately to criticism from supervisors; get along with coworkers or peers without distracting

15  them or exhibiting behavioral extremes; and set realistic goals and make plans independently of

16  others.  (Id.)  Finally, Dr. Gottschalk determined that the limitations he opined translated into

17  plaintiff being "[m]entally able to do at least 1-2 step tasks not requiring significant, close,

18  coordinated interactions;" and "[a]ble to adapt to change in work routine" (AT 193.)

19          By assigning "great weight" to Gottschalk's opinion, the ALJ determined that it more

20  closely reflected plaintiff's actual mental RFC than the opinion of Dr. Marshall, who the ALJ

21  found to be only somewhat less persuasive.  (AT 502-03.)  The ALJ reasonably reflected this

22  determination in his mental RFC determination that plaintiff can rarely have face-to-face

23  interaction with the public; frequently have face-to-face interaction with coworkers and

24  supervisors; occasionally understand remember, and carry out complex or detailed job

25  instructions; and work at jobs that have weekly or daily, but not hourly goals or quotas.  (AT

26  500.)  Indeed, these limitations contained in the ALJ's RFC determination reflected a synthesis of

27  both Dr. Marshall's and Dr. Gottschalk's opinions, with a slight favorability given to the

28  limitations opined by Dr. Gottschalk's opinion when the two physicians' opinions differed.

The ALJ is "not required to adopt or rely on any medical source opinion in making [his] residual functional capacity assessment[.]"  Moses v. Astrue, 2012 WL 1326672, at *4 (D. Colo. April 17, 2012).  Instead, the ALJ determines a claimant's RFC "based on all of the relevant medical and other evidence."  20 C.F.R. § 416.945(a)(3).  Here, the ALJ properly assigned relative weights to the opinions of Dr. Marshall and Dr. Gottschalk and rendered an RFC determination that reasonably reflected that assignment.  The ALJ was not required to adopt all of the limitations contained in Dr. Marshall's opinion just because he assigned it "good weight."  Accordingly, the ALJ did not err in his consideration of Dr. Marshall's opinion.

b.   Dr. Kalman

Dr. Kalman conducted two consultative psychiatric examinations of plaintiff.  The first examination occurred on August 4, 2003.  (AT 265-73.)  After this examination, Dr. Kalman diagnosed plaintiff with a schizoaffective disorder and schizophrenia, chronic paranoid type, rule out borderline personality disorder; and assessed Plaintiff with a global assessment of functioning ("GAF") score of 50.  (AT 267.)  Dr. Kalman opined that plaintiff is unable to get along with the public or her family; is emotionally labile with rapid speech; is unable to relate and interact with coworkers and supervisors; is unable to interact with the public; is able to understand, remember, and execute simple one- and two-step job instructions; has a decreased ability to maintain attention and concentration; has a limited ability to withstand stress and pressures associated with daily work activities; and is not competent to handle her own funds.  (Id.)  He opined further that plaintiff's condition would not improve within twelve months unless she became more compliant with psychotropic medication treatment.  (AT 268.)

Dr. Kalman also completed a medical source statement regarding the extent of the limitations caused by plaintiff's mental impairments.  (AT 270-73.)  Therein, Dr. Kalman opined that plaintiff is not significantly limited in the ability to understand, remember, and carry out very short (one to two step) instructions or tasks, and was mildly limited in her ability to remember locations and work-like procedures, make simple work-related decisions, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and be aware of normal hazards and take appropriate precautions.  (AT 270-72.)  Dr. Kalman opined further that

plaintiff is moderately limited in the ability to understand, remember, and carry out detailed (three or more step) instructions, which may or may not be repetitive; maintain attention and concentration for extended periods (approximately two-hour segments between arrival and first break, lunch, second break, and departure) with four such periods in a workday; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public or customers; ask simple questions or request assistance from supervisors; respond appropriately to expected or unexpected changes in the work setting; travel in an unfamiliar place or use public transportation; and set realistic goals or to make plans independently of others.  (Id.)  Dr. Kalman also opined that plaintiff is markedly limited in the ability to accept instructions and to respond appropriately to criticism from supervisors and to get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes.  (AT 272.)  Finally, he determined that plaintiff's mental impairments had existed at the level of severity he opined for 10 years prior to the date of his examination.  (AT 723.)

Dr. Kalman conducted his second psychiatric examination of plaintiff and rendered a second opinion regarding the extent of plaintiff's mental impairments on June 30, 2008.  (AT 452-61.)  After this second examination, Dr. Kalman diagnosed plaintiff with a generalized anxiety disorder, depressive disorder, not otherwise specified, and borderline intellectual functioning; and assessed plaintiff with a GAF score of 55.  (AT 455.)  Dr. Kalman also completed a second medical source statement regarding the extent of limitations caused by plaintiff's mental impairments.  (AT 458-61.)  Unlike his first opinion, Dr. Kalman found that plaintiff is not markedly limited in any area of mental functioning.  (Id.)  Instead, he found that plaintiff is moderately limited in the ability to understand, remember, and carry out detailed (three or more steps) instructions, which may or may not be repetitive; work in coordination with or proximity to others without being unduly distracted by them; interact appropriately with the

general public or customers; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes.  (AT 458-60.)  Dr. Kalman also opined that plaintiff is mildly limited in the ability to remember locations and work-like procedures; maintain attention and concentration for extended periods (approximately two-hour segments between arrival and first break, lunch, second break, and departure) with four such periods in a workday; understand, remember, and carry out very short and simple (one- or two-step) instructions or tasks; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; ask simple questions or request assistance from supervisors; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; interact appropriately with the general public or customers; respond appropriately to expected or unexpected changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others (Id.)  Finally, Dr. Kalman determined that plaintiff's mental impairments had existed at the level of severity he opined since 1996.  (AT 461.)

The ALJ provided the following assessment with regard to Dr. Kalman's opinions:

> Dr. Kalman's opinion is given little weight as it appears to be based
> primarily on the claimant's subjective complaints instead of
> objective findings.  Moreover, there are numerous inconsistencies
> between Dr. Kalman's prior diagnosis and assessment and the most
> recent evaluation in 2008.  If anything the absence of psychotropic
> medications, the absence of any therapy or counseling, and Dr.
> Kalman's findings of a few moderate limitations and almost all
> mild limitations, appears to show the claimant has indeed improved
> mentally to where she is much more functional than previously.
> Finally, Dr. Kalman's opinion is given reduced weight due to the
> presence of errors like finding the claimant's onset was 10 years
> ago in the prior assessment of 2003 making the onset around 1993
> and the current evaluation which places onset around 1996.
> Although it may be argued that these are insignificant mistakes,
> taken together with the vastly different diagnoses and the cursory
> and incomplete nature of the medical source statement raise

14

1    questions as to whether these one-time evaluations by Dr. Kalman

2    have any reliability.

3    (AT 505.)  These were specific and legitimate reasons for discounting Dr. Kalman's opinions that

4    were supported by substantial evidence in the record.[6]

5         First, the ALJ properly determined that Dr. Kalman's earlier opinion was based more on

6    plaintiff's own subjective complaints regarding the extent of her mental limitations, rather than

7    the objective medical findings reflected in plaintiff's examination, including his own findings.

8    Indeed, it was reasonable for the ALJ to determine that the more limiting aspects of Dr. Kalman's

9    2003 opinion were based primarily on plaintiff's complaints as they were not corroborated by any

10   other examination or physicians' opinion in the record, including Dr. Kalman's later examination

11   and opinion.  (See AT 122-28, 191-93, 452-61.)  As discussed in further detail below, the ALJ

12   properly found plaintiff's pain and symptom testimony to lack credibility.  Accordingly, the ALJ

13   was also not required to accept the limitations Dr. Kalman opined that reasonably appeared to

14   reflect plaintiff's unbelievable subjective complaints.  See Tommasetti, 533 F.3d at 1041 ("An

15   ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-

16   reports that have been properly discounted as incredible.").

17        Second, the ALJ also properly determined the fact that Dr. Kalman opined in his second

18   opinion that plaintiff was less restricted in many areas of mental functioning than what he opined

19   in his initial assessment, thus indicating that plaintiff's mental impairments actually improved

20   over the course of the roughly five years between Dr. Kalman's two examinations.  Indeed, in his

21   2008 opinion, Dr. Kalman found that plaintiff had either mild or moderate mental limitations in

22

23   [6] Plaintiff argues in her briefing that the court should apply the "clear and convincing reasons"
     standard in evaluating whether the ALJ properly discounted Dr. Kalman's opinions even though

24   they are contradicted by the opinions of other examining physicians in the record.  (ECF No. 14-1
     at 21.)  However, the Ninth Circuit Court of Appeals has held that an ALJ may discount the

25   opinion of a treating or examining physician that is contradicted by another treating or examining
     physician's opinion for "specific and legitimate reasons."  Lester, 81 F.3d at 830.  Here, it is clear

26   from the record that Dr. Kalman's opinion is contradicted by the other examining opinions in the
     record, specifically, those of Dr. Marshall and Dr. Gottschalk.  (See AT 122-28, 191-93.)

27   Accordingly, the court uses the "specific and legitimate reasons" standard instead of the more
     restrictive standard plaintiff advances.

28

15

all areas of mental functioning.  (AT 458-60.)  This opinion contrasted with his opinion in 2003,

where he found that plaintiff primarily had moderate mental limitations in most areas of mental

functioning with marked limitations in some others, and clearly demonstrated that plaintiff's

mental condition improved between the two examinations.  (AT 270-71.)  As the ALJ noted in his

decision, the fact that the record shows that plaintiff was not taking psychotropic medications nor

attending any therapy or counseling for her mental impairments at the time of Dr. Kalman's 2008

opinion emphasizes the fact that plaintiff improved without treatment, and that the more

restrictive limitations contained in Dr. Kalman's earlier opinion did not accurately reflect

plaintiff's mental functioning throughout the course of the relevant period.

Finally, the ALJ also properly determined that the inconsistencies between certain details

contained in Dr. Kalman's earlier and later examination notes, coupled with the fact that both of

his medical source statements were cursory in nature, undermined the reliability of those

opinions.  See Molina v. Astrue, 674 F.3d 1104, 1111-12 (9th Cir. 2012); Meanel, 172 F.3d at

1114 (an ALJ may discount a treating or examining physician's opinion that is "conclusory and

unsubstantiated by relevant medical documentation"); Tommasetti v. Astrue, 533 F.3d 1035,

1041 (9th Cir. 2008) (holding that the existence of internal inconsistencies within a treating

physician's opinion constitutes a specific and legitimate reason for the ALJ to reject that

physician's opinion concerning the claimant's functional limitations); Rollins, 261 F.3d at 856

(holding that the ALJ properly discounted a treating physician's functional recommendations that

"were so extreme as to be implausible and were not supported by any findings made by any

doctor," including the treating physician's own findings).  As the ALJ noted, Dr. Kalman

determined in his 2003 opinion that the onset date of plaintiff's impairments occurred 10 years

prior, or 1993, while he determined in his 2008 opinion that the onset of plaintiff's mental

impairments occurred in 1996.  (AT 273, 461.)  Dr. Kalman's notes for both of his examinations

are also brief and contain little in the way of a rationale to support his opinions.  (See AT 265-68,

452-56.)  Accordingly, substantial evidence also supported this additional basis provided by the

ALJ to support his determination that Dr. Kalman's opinions were entitled to "little weight."

////

1    In sum, the ALJ provided multiple specific and legitimate reasons for discounting Dr.

2    Kalman's opinions that were supported by substantial evidence in the record.  Accordingly, the

3    ALJ did not err in his assessment of that physician's opinions.

4                    3.      *Whether the ALJ Erred in Discounting Plaintiff's Testimony*

5    Third, plaintiff argues that the ALJ erred in finding plaintiff's testimony less than fully

6    credible because the ALJ's reasons for discounting that testimony were not clear and convincing

7    reasons supported by substantial evidence.

8    In <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of

9    Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective
> pain or symptoms is credible, an ALJ must engage in a two-step
> analysis.  First, the ALJ must determine whether the claimant has
> presented objective medical evidence of an underlying impairment
> which could reasonably be expected to produce the pain or other
> symptoms alleged.  The claimant, however, need not show that her
> impairment could reasonably be expected to cause the severity of
> the symptom she has alleged; she need only show that it could
> reasonably have caused some degree of the symptom.  Thus, the
> ALJ may not reject subjective symptom testimony . . . simply
> because there is no showing that the impairment can reasonably
> produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence
> of malingering, the ALJ can reject the claimant's testimony about
> the severity of her symptoms only by offering specific, clear and
> convincing reasons for doing so. . . .

19    <u>Lingenfelter</u>, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "At the same time, the

20    ALJ is not required to believe every allegation of disabling pain, or else disability benefits would

21    be available for the asking...."  <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012).

22    "The ALJ must specifically identify what testimony is credible and what testimony

23    undermines the claimant's complaints."  <u>Valentine v. Comm'r of Soc. Sec. Admin.</u>, 574 F.3d 685,

24    693 (9th Cir. 2009) (<u>quoting</u> <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir.

25    1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the

26    "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or

27    between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and

28    testimony from physicians and third parties concerning the nature, severity, and effect of the

1   symptoms of which [claimant] complains.'"   Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.

2   2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.

3   1997)).   If the ALJ's credibility finding is supported by substantial evidence in the record, the

4   court "may not engage in second-guessing."  Id. at 959.

5          Here, the ALJ found plaintiff's testimony regarding the extent of the pain and limitations

6   stemming from her mental and physical impairments to be less than fully credible based on the

7   following rationale:

8               Although it is acknowledged that she experiences some discomfort,
             the objective medical evidence of record establishes that she retains
9             the ability to engage in work-related activities.  Furthermore, there
             are numerous inconsistent statements that detrimentally impact the
10            claimant's credibility, including indications in her Disability Report
             and at the prior hearing that her educational level was a GED,
11            which is incompatible with her statements to Dr. Kalman that she
             only had an 11th grade education, and may have influenced his
12            finding of borderline intellectual functioning.  She also has made
             inconsistent statements related to her past drug and alcohol use,
13            admitting a history and then denying any use.

14

15   (AT 502.)  This rationale provided clear and convincing reasons to support the ALJ's adverse

16   credibility determination that were supported by substantial evidence in the record.

17          First, the ALJ properly determined that plaintiff's claims of disabling symptoms stemming

18   from her impairments was belied by the objective medical evidence in the record.  Although a

19   lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective

20   symptom testimony, it is nevertheless a relevant factor for the ALJ to consider.  Burch, 400 F.3d

21   at 681.  Here, the record demonstrates that plaintiff complained of debilitating levels of pain with

22   regard to alleged physical impairments such as arm, back, and stomach pain, but her treating

23   physicians made few, if any, objective findings indicating that she had physical impairments that

24   could cause such alleged ailments.  (E.g., AT 113, 157, 174, 186, 275, 278-79, 465, 572-84, 591,

25   596-97, 601.)  To the extent plaintiff's physicians were able to discern such impairments, their

26   findings regarding the extent of those impairments and the types of treatment they prescribed

27   highly suggest that those ailments were not to the debilitating degree that plaintiff alleged.  (Id.)

28   Similarly, with regard to plaintiff's mental impairments, the medical opinion evidence in the

1    record that the ALJ found credible suggests that plaintiff's mental impairments generally caused

2    moderate or no limitations in most areas of mental functioning, which suggest that they were not

3    as debilitating as plaintiff alleged.  While the ALJ was not permitted to rely solely on the fact that

4    plaintiff's complaints were not supported by objective medical evidence in support of his adverse

5    credibility determination, it was still a proper consideration and was not in error here since he also

6    provided another clear and convincing reason to support his determination.

7          Indeed, the ALJ also properly concluded that the evidence in the record of plaintiff's

8    inconsistent statements undermined the credibility of her testimony regarding the extent of her

9    symptoms.  First, the record shows that while plaintiff noted in her disability report that she

10   obtained her GED, she told Dr. Kalman that she had only completed the eleventh grade.  (AT 76,

11   453.)  Plaintiff later clarified during the administrative hearing that she had only completed the

12   eleventh grade, but then later obtained her GED, therefore indicating that her statement to Dr.

13   Kalman regarding her education did not inherently conflict with her statement in her disability

14   report.  (AT 683.)  However, the ALJ reasonably noted in his decision that plaintiff's omission of

15   the fact that she has a GED to Dr. Kalman may have influenced that physician's opinion that

16   plaintiff had borderline intellectual functioning, therefore negatively impacting plaintiff's

17   credibility had the omission been purposeful.  (AT 502.)

18         More importantly, the ALJ properly discounted plaintiff's credibility because she gave

19   inconsistent statements about her drug and alcohol history.  See Thomas, 278 F.3d at 958-59.

20   The record shows that plaintiff reported to Dr. Kalman during her consultative examination in

21   2003 that she had used crack cocaine in the past.  (AT 266.)  However, during that same

22   physician's examination of plaintiff in 2008, plaintiff denied having had any history with drugs or

23   alcohol.  (AT 453).  Plaintiff also testified to the ALJ at the hearing that she remembered clearly

24   that she had not used any drugs or alcohol since 1999, but subsequently amended her testimony to

25   state that she had one relapse in 2003 after the ALJ inquired further into the subject.  (AT 717-

26   18.)  The ALJ permissibly and reasonably found that these inconsistencies in plaintiff's

27   statements to Dr. Kalman and during her testimony undermined her credibility.

28   ////

1    In sum, the ALJ provided multiple permissible grounds for his adverse credibility

2    determination with regard to plaintiff's testimony that were supported by substantial evidence

3    from the record.

4        4.    *Whether the ALJ Erred at Step Five by Determining that Plaintiff Could*

5            *Still Perform Other Work in the National Economy*

6        Finally, plaintiff argues that the ALJ erred in rendering his step-five determination based

7    on the testimony provided by the VE because the ALJ's hypothetical based on his RFC

8    determination failed to fully encompass all of plaintiff's limitations supported by the evidence in

9    the record, therefore meaning that the VE's testimony did not constitute substantial evidence.

10   Specifically, plaintiff contends that the ALJ's hypothetical based on his RFC determination failed

11   to incorporate certain mental limitations opined by Dr. Marshall despite the fact that the ALJ gave

12   that physician's opinion "good weight."  However, as discussed above, the ALJ properly

13   considered and weighed Dr. Marshall's opinion and based the limitations contained in his RFC

14   determination on substantial evidence from the record.  See Greger v. Barnhart, 464 F.3d 968,

15   973 (9th Cir. 2006) (quoting Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001)) ("The

16   ALJ . . . 'is free to accept or reject restrictions in a hypothetical question that are not supported by

17   substantial evidence.'").  Accordingly, plaintiff's argument is without merit.

18       The ALJ posed a hypothetical to the VE that incorporated all of the limitations included in

19   the ALJ's RFC determination, to which the VE responded that there existed several jobs within

20   the national economy that plaintiff could perform.  (AT 718-20.)  The ALJ properly relied on this

21   testimony to support his step five determination that there existed jobs in significant numbers

22   within the national economy that plaintiff could perform given her RFC.  See Bray v. Comm'r of

23   Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).  Therefore, the ALJ's step five

24   determination that plaintiff was not disabled within the meaning of the Act was proper and

25   supported by substantial evidence.

26   ////

27   ////

28   ////

20

1    V.    <u>CONCLUSION</u>

2         In sum, the ALJ's decision was free from prejudicial error and supported by substantial

3    evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

4         1.  Plaintiff's motion for summary judgment (ECF No. 14) is DENIED.

5         2.  The Commissioner's cross-motion for summary judgment (ECF No. 21) is

6    GRANTED.

7         3.  The Commissioner's final decision is AFFIRMED, and judgment is entered for the

8    Commissioner.

9         4.  The Clerk of Court shall close this case.

10        IT IS SO ORDERED.

11   Dated:  March 15, 2017

12

13                                        KENDALL J. NEWMAN
                                          UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28